UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARY E. TANCAYO, | No. CV 09-2747-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on April 22, 2009, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 30, 2009, and May 14, 2009. The parties filed a Joint Stipulation on October 9, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 19, 1952. [Administrative Record ("AR") at 41, 85.] She obtained her GED, and has past relevant work experience as a job coach and general office clerk. [AR at 41, 45-46, 56, 108, 110-15.]

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments on December 2, 2005, and December 12, 2005,[1] respectively, alleging that she has been unable to work since June 10, 2004, due to, among other things, right knee pain, swollen feet, and cramping in her legs and feet. [AR at 69-70, 85-92, 99-109.] After plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 71-76, 79.] A hearing was held on June 27, 2007, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert ("VE") also testified. [AR at 38-68.] On June 29, 2007, the ALJ issued an unfavorable decision. [AR at 16-26.] When the Appeals Council denied plaintiff's request for review of the hearing decision on March 26, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4, 14.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] In the Joint Stipulation, the parties state that plaintiff filed her applications for benefits on February 10, 2006. [See Joint Stipulation ("JS") at 2.] It appears that this date is in error; plaintiff filed her applications in December 2005. [See AR at 19, 69-70, 85-92.]

2

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since June 10, 2004, the alleged onset date of disability.[2] [AR at 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of hypertension, peripheral edema, hypothyroidism, chronic lumbar strain, and probable arthritis. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22.] The ALJ further found that plaintiff retained the following residual functional capacity ("RFC")[3] :

> [Plaintiff] is limited only by an inability to lift, carry, push or pull more than 10 pounds frequently or more than 20 pounds occasionally; an inability to stand or walk longer than 2 hours in an 8-hour workday; an inability to sit longer than 6 hours in an 8-hour workday; a restriction from more than occasional stooping, balancing, kneeling, squatting, and crawling; a restriction from more than rarely climbing stairs and crouching; and a restriction from jobs requiring use of vibrating tools. Additionally, [plaintiff] should avoid temperature extremes.

---

  [2] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 1, 2009. [AR at 21.]

  [3] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

[Id.] At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as a general clerk as it is ordinarily performed according to the Dictionary of Occupational Titles ("DOT"), at No. 219.362-010. [AR at 24.] The ALJ continued her analysis, and at step five, using the Medical-Vocational Rules as a framework and the VE's testimony, the ALJ concluded that plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." [AR at 24-25.] Accordingly, the ALJ found that plaintiff is not disabled. [AR at 26.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) identify plaintiff's past relevant work and her transferable skills from that work; and (2) consider the findings of plaintiff's treating physician, Dr. Sergio Ugalde. [JS at 4.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A. ALJ'S CONSIDERATION OF DR. UGALDE'S OPINION

Plaintiff asserts that the ALJ failed to properly consider the findings of Dr. Sergio Ugalde, plaintiff's treating physician. [JS at 21-24.] Specifically, plaintiff contends that Dr. Ugalde's opinion reflects that plaintiff is more functionally limited than is indicated by the ALJ's RFC determination, and that the ALJ improperly ignored Dr. Ugalde's opinion in assessing plaintiff's RFC. [Id.]

From June 2005 to April 2007, Dr. Ugalde treated petitioner for, among other things, hypertension and hypothyroidism. [See AR at 201, 217, 219, 231.] On April 23, 2007, Dr. Ugalde completed a Physical Residual Functional Capacity Questionnaire, in which he assessed plaintiff's work-related functional limitations. [AR at 231-34.] Dr. Ugalde assessed plaintiff with the following diagnoses: hypothyroidism, hypertension, overweight, probable arthritis, chronic lumbar strain, bilateral knee pain, and a history of a right knee operation and ligament injury. [AR at 231.] He indicated that plaintiff receives mild pain relief from pain medications (such as ibuprofen), and opined that plaintiff's pain and other symptoms would occasionally interfere with her ability to pay

attention and concentrate to a level necessary to sustain simple, repetitive work tasks during an eight-hour workday. [AR at 231-32.] Dr. Ugalde further opined that plaintiff can sit for two hours, total, in an eight-hour workday (and not for more than two hours at a time); stand/walk for less than two hours, total, in an eight-hour workday (and not for more than one hour at a time); lift or carry ten pounds frequently and twenty pounds occasionally; twist, stoop, and bend occasionally; crouch and climb stairs rarely; and never climb ladders; and that she has no limitation with regard to repetitive reaching, handling, or fingering. He also opined that temperature extremes would be difficult for plaintiff due to her probable arthritis, and that she would be better suited for office, rather than labor-intensive, work. [AR at 232-34.]

        In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations

omitted); Social Security Ruling[4] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

In the decision, the ALJ expressly noted some but not all of Dr. Ugalde's April 23, 2007, findings, including his findings that plaintiff would be better suited for office work and that she takes ibuprofen for pain. [AR at 23.] It also appears that the ALJ accepted some but not all of Dr. Ugalde's opinions concerning plaintiff's functional limitations. Specifically, the ALJ's RFC determination appears to include Dr. Ugalde's conclusions that plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally; stoop occasionally; and crouch and climb stairs rarely; and that she should avoid temperature extremes. [AR at 22.] However, there is no indication that the ALJ took into account the remaining specific limitations set forth in Dr. Ugalde's assessment (i.e., that plaintiff can only sit for a total of two hours in an eight-hour period; stand/walk for <u>less</u> than two hours in an eight-hour period, and for only one hour at a time; and never climb ladders; and that her pain symptoms would occasionally interfere with her ability to concentrate on simple, repetitive work tasks). The ALJ also did not expressly state the weight that she afforded Dr. Ugalde's opinions in reaching the RFC determination. This was error. The ALJ was required to provide an <u>explicit</u> explanation, supported by evidence in the record, for the weight given to Dr. Ugalde's medical opinions. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Since the ALJ did not include in her RFC determination some of the limitations assessed by Dr. Ugalde, it appears that the ALJ implicitly rejected some of Dr. Ugalde's findings. This too was erroneous. To properly reject Dr. Ugalde's findings, the ALJ was required to "do more than offer [her] conclusions. . . . [She was required to] set forth [her] own interpretations and explain why they, rather than the doctor['s],

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[were] correct." Orn, 495 F.3d at 632.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).[5]

An RFC is an administrative finding reserved to the ALJ (or Commissioner) that should only be reached after all relevant evidence, including medical opinions, has been properly considered. SSR 96-5p; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  Remand is warranted so that the ALJ can explicitly weigh and properly credit or reject the findings of Dr. Ugalde.  A new RFC determination may also be warranted if, after reconsidering Dr. Ugalde's findings, the ALJ credits any part of Dr. Ugalde's opinion that was previously excluded from the RFC determination.

**B.  PAST RELEVANT WORK**

    **1.  <u>Plaintiff's Ability to Do Her Past Work</u>**

Plaintiff asserts that the ALJ erred in concluding that she can perform her past work as a general office clerk. [JS at 5-13.] As an initial matter, plaintiff contends that the ALJ's conclusion is erroneous because, according to plaintiff, she did not perform her work as a general office clerk long enough for it to qualify as past <u>relevant</u> work according to the regulations. [Id.]

---

[5] Defendant argues that the ALJ properly rejected Dr. Ugalde's opinions regarding plaintiff's functional limitations, to the extent his opinions were different from the RFC, because Dr. Uglade's opinions were "unsupported by his own treatment notes," he did not refer plaintiff to a specialist, and he gave plaintiff conservative medical treatment. [JS at 25.] The ALJ did not raise any of these reasons (or any other reasons) for effectively rejecting some of Dr. Ugalde's opinions. The Court will not rely on reasons to support the decision not provided by the ALJ. "If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand." Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D.Cal. 1996) (quoting Williams v. Bowen, 664 F.Supp. 1200, 1207 (N.D.Ill. 1987)); see also Ceguerra v. Secretary of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

At step four of the sequential evaluation process, the ALJ is required to engage in an individualized assessment of the claimant's ability to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). "Past relevant work is work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). See 20 C.F.R. §§ 404.1565(a), 416.965(a). Under 20 C.F.R. §§ 404.1520(f) and 416.920(f), a claimant will be found "not disabled" if she retains the RFC to perform: "(1) [t]he actual functional demands and job duties of a particular past relevant job; *or* (2) [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61 (emphasis in original). The claimant has the burden of showing that she can no longer perform her past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990). Although the claimant has the burden of proof at step four of the evaluation process, "the ALJ still has a duty to make the requisite factual findings to support his conclusion" as to whether the claimant can perform her past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); see 20 C.F.R. §§ 404.1520, 416.920.

In determining whether a claimant's past work constitutes past relevant work, an ALJ may look to the DOT, obtain testimony from a claimant regarding her past work, and obtain testimony from a VE. See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("[in] [d]etermining whether you can do your past relevant work[,] [w]e will ask you for information about work you have done in the past. . . . We may [also] use the services of vocational experts . . . , or other resources, such as the 'Dictionary of Occupational Titles.'"). Here, plaintiff testified at the hearing that she performed her job as a general office clerk for three or four months before she stopped working altogether in June 2004. [AR at 45-46.] The VE testified that the job (DOT No. 219.362-010) qualified as past relevant work, and that according to the DOT, it has the specific vocational preparation ("SVP") level of four. [AR at 55.] The DOT defines SVP level "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). A job with a level four SVP means

that a typical worker will need "over 3 months up to and including 6 months" to learn the skills necessary to perform the job. Id.

Because plaintiff performed her job as a general office clerk for up to four months [AR at 45-46], which is a duration of time that falls within the DOT's description regarding how long it typically takes a worker to learn how to do that job (i.e., more than three months), and the VE determined that the job was past relevant work, the ALJ's conclusion that plaintiff's general office clerk job was past relevant work is supported by substantial evidence. See Andrews, 53 F.3d at 1039-40. See Wright-Hines v. Comm'r of Soc. Sec., __F.3d __, 2010 WL 616437 (6th Cir. February 23, 2010) (substantial evidence supported ALJ's conclusion that claimant performed a past job long enough to qualify as past relevant work where she had the job for three months and a vocational assessment classified it as past relevant work); see also Perez v. Astrue, 247 Fed.Appx. 931, 933 (9th Cir. 2007) (VE's testimony, DOT definitions, and claimant's job description constituted substantial evidence supporting ALJ's conclusion about claimant's past relevant work) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

Plaintiff also argues that the ALJ erroneously concluded that plaintiff can perform the work of a general office clerk as it is defined by the DOT because the ALJ's RFC determination indicates that she is more functionally limited than the exertional requirements listed under DOT No. 219.362-010, and the ALJ provided no explanation for deviating from the DOT. Specifically, plaintiff contends that according to the RFC, she is limited to only two hours of standing or walking in a normal workday, whereas DOT No. 219.362-010 is a "light work" position defined by the Administration as requiring six hours of standing and/or walking in an eight-hour workday. [JS at 9, 19-20.]

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles," and for an ALJ to properly conclude that a job is generally performed in a manner "that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" See Pinto, 249 F.3d at 845-46 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that the job description found in the DOT raises a presumption as to how the job is performed; the presumption is rebuttable if the record contains

persuasive evidence to support a deviation)). When the ALJ's decision contradicts the DOT, the ALJ must offer an explanation regarding why he or she is rejecting the DOT's description. See Johnson, 60 F.3d at 1434. In order for "the ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847.

Here, the ALJ's conclusion that plaintiff can perform the job of a general office clerk as it is defined by the DOT is at odds with the DOT's description of the job. DOT No. 219.362-010 is a light work position.[6] According to SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and "the primary difference between sedentary and most light jobs" is that light work jobs require "a good deal of walking or standing." See SSR 83-10; see also 20 C.F.R. §§ 404.1567(b), 416.967(b) (a job is classified as "light work" when it requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."); see also Gallant v. Heckler, 753 F.2d 1450, 1454 n. 1 (9th Cir. 1984) ("the full range of light work requires standing or walking for up to two-thirds of the workday"). According to the ALJ's RFC determination, plaintiff cannot stand for more than two hours in an eight-hour workday, which is not long enough to be able to perform a full range of light work. [AR at 22.] As such, plaintiff cannot perform the work of a general office clerk -- a light work job -- as it is defined under DOT No. 219.362-010.

---

[6] To the extent defendant asserts that DOT No. 219.362-010 is not necessarily a light work position and that the "light work" description provided under DOT No. 219.362-010 is only applicable to the job's "strength" requirements (i.e. lifting and carrying), but not its "physical" requirements [JS at 16-17], the Court rejects this assertion. DOT No. 219.362-010 is a light work position. The "light work" definition provided under DOT No. 219.362-010 is a general definition of "light work" that mirrors the Administration's rulings defining "light work," and that in fact contains a physical component. See, e.g., SSR 83-10 (elaborating "the activities needed to carry out the requirements of sedentary, light, and medium work," including a definition of "light work" that largely mirrors the general "light work" definition provided under DOT No. 219.362-010).

The ALJ did not rely on persuasive evidence for deviating from the DOT's description in concluding that plaintiff can perform the work of a general office clerk as it is generally performed. See Pinto, 249 F.3d at 845-46. In the decision, the ALJ asserted that the VE testified that plaintiff "is capable of performing the duties of a general clerk as it is described in the [DOT]."[7] [AR at 24.] Even assuming, arguendo, that the VE did testify that a person with plaintiff's RFC could perform the job of a general office clerk as it is generally performed, the VE's testimony still deviated from the DOT because, as explained above, plaintiff cannot perform a full range of light work. Where there is an inconsistency between the VE's testimony regarding a claimant's ability to perform a job and the DOT description of how the job is performed, there must be persuasive evidence to support the inconsistency. See Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). Moreover, it is the ALJ's affirmative responsibility to ask about any possible conflicts between the VE's testimony and the DOT. See SSR 00-4p ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflicts between the VE . . . evidence and the information provided in the DOT.") (emphasis added). "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a [VE's] testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

Here, the ALJ did not ask if the VE's testimony conflicted with the DOT, and neither the VE nor the ALJ pointed to any persuasive evidence, or provided any explanation, to support the departure from the DOT (i.e., no support was offered by either the VE or the ALJ how an individual who is unable to stand or walk for more than two hours in an eight-hour workday can perform a light work job that may require up to six hours of standing or walking in an eight-hour workday). Since no persuasive evidence exists to support the deviation between the ALJ's decision that

---

[7] After reviewing the VE's testimony, the Court agrees with plaintiff that it appears that the VE did not make such a statement. [See JS at 19.] Rather, the VE testified that a person with plaintiff's RFC could not perform the position as plaintiff had performed it (i.e., sitting half the day and standing half the day) [AR at 55-56], and that a person who was able to stand four hours a day could perform the work of a general office clerk as it is generally performed according to the DOT. [AR at 59-60.] But four hours of standing in an eight-hour workday exceeds the ALJ's RFC determination concerning plaintiff's limitations. [AR at 22.]

1  plaintiff can do the work of a general office clerk as generally performed and the DOT's description
2  of that job, substantial evidence does not support the ALJ's conclusion that plaintiff can perform
3  her past relevant work as a general office clerk. Andrews, 53 F.3d at 1039-40.  Accordingly,
4  remand is warranted on this issue. See Light, 119 F.3d at 792 (remand warranted where "[n]either
5  the ALJ nor the [VE] explained the reason for departing from the DOT").

### 2. **Transferable Work Skills**

Relying on SSR 82-41, plaintiff contends that the ALJ committed reversible error in concluding at step five of the sequential analysis that plaintiff has transferable work skills that enable her to perform other jobs existing in significant numbers in the national economy, because the ALJ failed to specifically identify what those transferable skills are. [JS at 13-14.] Relying on the VE's testimony that plaintiff has transferable skills from past relevant work experience [see AR at 56-57], the ALJ asserted in the decision that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." [AR at 24.]  The ALJ did not expressly identify plaintiff's acquired work skills or to what jobs those skills are transferable.  Based in part on her conclusion that plaintiff has transferable work skills, the ALJ concluded that plaintiff is not disabled. [AR at 25-26.]

The Ninth Circuit recently held that it is reversible error for an ALJ to determine that a plaintiff has acquired transferable work skills from past employment without expressly explaining in the decision what those acquired skills are. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1223-25 (9th Cir. 2009).  Specifically, the Bray court stated that "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ... ALJ's decision.... It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court." Bray, 554 F.3d at 1223 (ellipses in original) (quoting SSR 82-41).  The Bray court also concluded that even where the ALJ relies on a VE's testimony in determining that a claimant has transferable skills from past work, the ALJ is still required to

1  expressly identify in the decision what work skills are transferable and to what specific occupations
2  those acquired skills apply.  See id. at 1225 (adopting Second Circuit's approach from Draegert
3  v. Barnhart, 311 F.3d 468 (2d Cir. 2002)).  Because the ALJ did not explicitly identify in the
4  decision the specific transferable job skills that plaintiff has acquired from past work and to what
5  jobs those skills apply, remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate for the ALJ to: 1) reconsider Dr. Ugalde's opinion, and if necessary, reevaluate plaintiff's RFC; 2) determine at step four of the sequential analysis whether a deviation from the job description found in the DOT is proper; and 3) expressly determine at step five of the sequential analysis what job skills plaintiff has acquired from past work and to what jobs those acquired skills apply.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 23, 2010

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE